THOMAS W. FERRELL, ESQ. (Bar No. 115605)
ferrellt@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
TEL: 619.236.1551
FAX: 619.696.1410

Attorneys for Plaintiff
STEMGENEX ®, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| STEMGENEX ℠, INC., | CASE NO.  **'15CV0411 BTM MDD** |
|---|---|
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT** |
| v. | |
| TOM BALSHI, M.D., a Medical Corporation dba TOM BALSHI, M.D., P.A., TOM  BALSHI, M.D., an individual, and DOES 1 through 20, | **Jury Trial Requested (FRCP 38)** |
| Defendants. | |

Plaintiff STEMGENEX INC. alleges the following against Defendants Tom Balshi, M.D. a Medical Corporation dba Tom Balshi, M.D., P.A.; Tom Balshi, an individual, and  Does 1-20.

## THE NATURE OF THE CASE

1.     Plaintiff  STEMGENEX sues primarily to stop Defendants' use of STEMGENEX' confidential proprietary business information and to stop defendants' infringement of STEMGENEX'  federally registered trademark "STEMGENEX®."   Plaintiff also seeks damages for Defendants' trademark infringement and for the profits defendants earned through the misuse of STEMGENEX' proprietary information.

///

2.     Dr. Balshi obtained access to STEMGENEX business information under a 2012 written agreement or contract (hereafter "Agreement") in which he promised "not to utilize any STEMGENEX business confidential information or business processes for his own benefit or the benefit of others except as is authorized by this Agreement."  Dr. Balshi broke his promise and used STEMGENEX' marketing ideas, business organization strategies, business processes, website design and pricing information to create his own business competing directly against STEMGENEX at the same time he was in contract with STEMGENEX.

3.     To trade on STEMGENEX trademark and goodwill, he named his business and website  STEMEDIX.  Plaintiffs bring this action at law and equity for trademark infringement, arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq* (the "Lanham Act"), and for breach of contract.

## **THE PARTIES**

4.     STEMGENEX, Inc. is a business entity incorporated under the laws of California with its principal place of business in La Jolla, California.

5.     On information and belief, Tom Balshi, M.D., a self-described "Medical Corporation dba Tom Balshi, M.D., P.A." is a medical doctor practicing medicine under a limited liability company structure, with an office in Delray Beach, Florida.

6.     On information and belief, Tom Balshi is the individual who practices medicine under the dba "Tom Balshi, M.D., P.A." and who resides in or around Delray Beach, Florida.

7.     The Defendants named "Doe" are persons unknown at this time but who are believed to have acted in concert with the named defendants in committing the Lanham Act violations alleged in this Complaint, primarily through the website named www.stemedix.com  They are persons who are believed to be jointly and severally liable with the named Defendants for the injury and damages alleged in

1 | this Complaint.  Plaintiff will take steps to name and join such Doe defendants
2 | when their identity can be discovered.

3 | **JURISDICTION AND VENUE**

4 |     8.    This Court has original jurisdiction over this case pursuant to 28
5 | U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§1116 and 1121.  This Court has
6 | supplemental jurisdiction over Plaintiffs' contract claim brought under California
7 | law pursuant to 28 U.S.C. §1367, because those claims form part of all the same
8 | case or controversy as the claims founded on the Lanham Act.

9 |     9.    The Court has personal jurisdiction over Defendants because
10 | defendants traveled to California for purposes related to their contract with
11 | STEMGENEX.  Defendants, using interactive marketing solicitations,  including
12 | their interactive website www.STEMEDIX.com , have solicited interactive
13 | communications and have conducted interactive commercial exchanges with
14 | citizens and residents of California.   Since August 30, 2012, defendants have
15 | consistently interacted with STEMGENEX  La Jolla, California-based personnel
16 | for the purpose of Defendants providing services to individuals that STEMGENEX
17 | introduced to defendants.  Defendants have directed their world wide web
18 | marketing efforts to individuals residing in California and other states.

19 | **VENUE**

20 |     10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3), in
21 | that, based upon information and belief,  the defendants are subject to personal
22 | jurisdiction in this judicial district.

23 | **FACTS COMMON TO ALL CLAIMS**

24 | **Adult Stem Cell Therapy**

25 |     11.    Since 2007, STEMGENEX founder, Rita Alexander, has been a
26 | pioneer in facilitating stem cell therapy to patients throughout the world.
27 | STEMGENEX' mission is to change the lives of patients diagnosed with
28 | degenerative illnesses through stem cell therapy.

1    12.    STEMGENEX' work revolves around the use of human stem cells
2    derived from the adult human body for medical treatment of the (often elderly)
3    human body.  Stem cells are unprogrammed cells in the human body that have been
4    described in the medical and scientific literature by the colorful label  "shape
5    shifters."  Under the right circumstances, these cells have the ability to change or
6    "differentiate" into other types of cells.  Stem cells are at the center of a new field
7    of science and medicine known as "regenerative medicine."  Because stem cells can
8    become bone, muscle, cartilage and other specialized types of cells, they have the
9    potential to treat many diseases, including Parkinson's, Alzheimer's, Diabetes and
10   more.

11    13.    The stem cell therapy itself is ordinarily an outpatient procedures that
12   generally involves these steps:  careful patient assessment  by medical doctors,
13   determination that stem cell therapy is indicated,  the extraction of a small amount
14   of  the adult patient's body fat in a mini-liposuction procedure under mild general
15   anesthesia,  the concentration and activation of  select stem cells that naturally
16   occur in human fatty tissues, and the reintroduction of the concentrated stem cells
17   back into the patient's own body according to medical and scientific protocols that
18   enhance the efficacy of the treatment.

19   **The Mission of STEMGENEX  and Its Business Model**

20    14.    STEMGENEX conducts stem cell therapy research, actively provides
21   information and education through various media outlets about stem cell therapy,
22   and facilitates individual patient-candidates' access to physicians who are trained
23   and qualified to perform the therapy.  Dr. Balshi *was* one such physician.

24    16.    STEMGENEX reaches members of the public who are interested in
25   stem cell therapy primarily through its website, www.STEMGENEX.com.  The
26   website is highly interactive, making it very simple for a person seeking
27   information or introduction to treating physicians to contact STEMGENEX by
28   telephone, by email and by direct inquiry through the website.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

15.     When an individual makes an inquiry, one of STEMGENEX' Patient Advocates responds, usually by telephone, to answer questions and provide information about the availability of stem cell therapies.   STEMGENEX will then introduce a patient-candidate to the appropriate medical doctor .  When a patient-candidate is approved for a stem cell therapy procedure by the doctor, STEMGENEX calculates the costs for the patient's treatment, including (but not limited to) the physician's fee, the surgical center costs, and the patient's travel and lodging if required.  STEMGENEX presents a fee proposal to the patient that covers all of those costs and includes a fee for STEMGENEX to pay for its work facilitating the patient's introduction to the physician and journey to the  place where the procedures are performed by the physician.

**The STEMGENEX® Trademark**

16.     On the initiative of STEMGENEX founder, Rita Alexander, an application to register the trademark "STEMGENEX" was filed with the United States Patent and Trademark Office on October 12, 2010.

17.     STEMGENEX, Inc. is the owner of the Registered Word Mark "STEMGENEX."  That trademark was added to the USPTO's  Principal Register on July 17, 2012 and assigned Registration No. 4176338.

18.     The trademark registration has not been abandoned, cancelled or revoked.

19.     The STEMGENEX trademark is registered in International Class 35 (Goods and Services) with this description:

> Business services, namely, referring individuals to medical services related to stem cell therapies; business introduction services, mainly, interfacing clients and health care practitioners and therapists, namely, medical referral services; providing medical, health and stem cell therapeutic referrals to individuals and practitioners; providing referral services to individuals in the fields of health care and well-being, wellness and stem cell therapy.

///

1    20.    Since at least mid-2012, STEMGENEX has consistently used the
2    STEMGENEX word mark in commerce to designate its distinctive and pioneering
3    work in the field of stem cell therapy. It is easily identifiable and recognizable in
4    the community of potential patients, medical service providers and academics who
5    are interested in stem cell therapy and research.

6    21.    In marketing its services, STEMGENEX has spent substantial sums of
7    money to develop its marketing materials, including its website, and the name
8    "STEMGENEX" in order to educate and provide services to patient-candidates for
9    stem cell therapy.

10    22.    STEMGENEX has made a substantial financial investment in the
11    marketing, promotion and advertising of its services, its research and educational
12    initiatives and in the maintenance and operation of its offices and staff in
13    San Diego, California.

14    **The Agreement between STEMGENEX and Dr. Balshi**

15    23.    STEMGENEX entered into its Agreement with Defendants effective
16    August 30, 2012.

17    24.    The Agreement provided that Dr. Balshi would be one of the
18    physicians who would be able to provide stem cell therapies to individuals
19    introduced to him by STEMGENEX.

20    25.    The Agreement provided that Dr. Balshi would perform, at a pre-
21    determined price, the stem cell therapy procedures contemplated in the Agreement.
22    Dr. Balshi's duties included reviewing medical histories; determining "in his sole
23    discretion" which patients would receive treatment; administer the treatments as
24    determined by Dr. Balshi "in his sole discretion;" maintain all personal, personnel
25    and facilities' licenses and qualifications in good standing; and to be on-call, as
26    necessary, for urgent or other post-procedure needs.

27    26.    The Agreement provided for STEMGENEX to maintain full-time staff
28    and offices from which

(1)     They monitor the research of medical and cosmetic successes and advancements made by stem cells and their applications, and

(2)     They design, develop and deploy sales and public relations programs and applications including but not limited to (a) website development and management, which requires systematic updating of content, design, and enhanced capabilities, (b) a marketing system designed to educate medical professionals, and the public at large, through said website, and links thereto and therefrom, as well as through Newsletters, Press Releases, education collateral and "Webinars" on the advantages of considering stem cell treatment generally and to STEMGENEX specifically,

(3)     They will employ a full-time team of skilled and knowledgeable "Lead Management" professionals to respond to inquiries generated through STEMGENEX programs, follow-up, pre-qualified candidates for availability of procedures (medically and financially),

(4)     They will provide (a) administrative support to and handle administrative requirements including pre-qualification, patient education, obtaining of medical histories, lab reports and other pertinent medical data, including billing and payment collection services, accounting, travel, lodging, scheduling of orientations and procedures for patients; (b) transport services from hotels to the clinic/place of treatment and return; (c) they will manage onsite (hotel and clinic) issues and post-treatment support and next day follow-up.

(5)     They will conduct educational and advertising campaigns which include advertising in various publications and postings on numerous websites. ... Develop and implement business development programs to enhance the growth of the business. ...

***Provide prospective patients to Tom Balshi, M.D., P.A.***

Quotations are from the Agreement, ***emphasis added***.

27.     The Agreement contains a confidentiality and non-use provision which state in relevant part,

All of STEMGENEX collateral materials, plans and programs, and patient information are all confidential information and may not be disclosed by Tom Balshi, M.D., P.A. without the prior written consent of STEMGENEX. ...

///

1
2
3
4

> Tom Balshi, M.D., P.A. agrees not to utilize any STEMGENEX business confidential information or business processes for his own benefit or the benefit of others except as is authorized by this Agreement, nor shall he disclose in any form or fashion directly or indirectly any STEMGENEX confidential business practices.

5   Quotations are from the Agreement.

6      28.   Since August 30, 2012, when the Agreement went into effect,

7   STEMGENEX has performed all of its material duties and responsibilities under

8   the Agreement.  During that time, STEMGENEX has referred numerous patient-

9   candidates to Dr. Balshi from several different states.  Dr. Balshi has been paid

10  significant sums of money in fees for the medical services he has provided to the

11  patient-candidates who are clients of STEMGENEX.

12     29.   After the Agreement went into effect on August 30, 2012,

13  STEMGENEX disclosed and entrusted Dr. Balshi  with virtually all of its

14  marketing materials, marketing know-how, website design, and substantive content

15  concerning stem cell research and stem cell therapies that STEMGENEX

16  developed and improved over the years.

17  **Dr. Balshi's Trademark Infringement and Misuse of Proprietary Information**

18     30.   Within the last six months, STEMGENEX became aware that after

19  Dr. Balshi signed the August 30, 2012 Agreement with STEMGENEX,  he created

20  a new and separate company that he named STEMEDIX to perform stem cell

21  therapy outside of his Agreement with STEMGENEX and in competition with

22  STEMGENEX.

23     32.   STEMGENEX introduced Dr. Balshi to patient-candidates that Dr.

24  Balshi decided to treat with stem cell therapy, but he did not treat them under his

25  Agreement with STEMGENEX.  Instead, he diverted them to his separate

26  company, STEMEDIX, to perform the therapy treatments, depriving

27  STEMGENEX of revenue STEMGENEX expected to receive under the

28  Agreement.

1    31.    Dr. Balshi named his competing company "STEMEDIX ," a name that
2  he uses in his marketing and broadcasting to the entire world via his company
3  website, www.STEMEDIX.com.

4    32.    Using the company named "*STEMEDIX*," and using the word in his
5  website address, Dr. Balshi misappropriated plaintiff's trademark as well as
6  STEMGENEX' confidential business information, business operations, and other
7  proprietary confidential information. Like the STEMGENEX website,
8  STEMEDIX is highly interactive in the same way. Through STEMEDIX.com
9  Dr. Balshi has created interactive relationships with individuals throughout the
10  United States, including California, and has created or attempted to create a market
11  for his STEMEDIX services in direct competition with STEMGENEX and to the
12  detriment of STEMGENEX relationship with him.

13    33.    Dr. Balshi registered a domain name for a marketing website,
14  STEMEDIX.com, on December 27, 2012. The website went "live" with content no
15  later than April 1, 2013. According to one on-line service that tracks and calculates
16  visitors to websites as of January 7, 2015, STEMEDIX received 178 visitors per
17  day. By extrapolation, that equates to as many as 64,000 visitors in a single year.

18    34.    Dr. Balshi's STEMEDIX business name and website address is
19  confusingly similar to the STEMGENEX trademark owned by Plaintiff.
20  Defendants embedded into their website keywords that are designed to capture
21  browsers searching for stem cell therapy in Florida; for example "parkinsons
22  Florida. However, the defendants embedded keywords designed to expand the
23  reach of the site beyond Florida, using that include, but are not limited to, "stem
24  cell therapy" and "stem cell treatment."

25    35.    Based upon information and belief, Dr. Balshi chose the name
26  STEMEDIX for his competing stem cell therapy services with the intention of
27  confusing the public and trading on the reputation and name recognition of
28  STEMGENEX in the field of stem cell therapy.

1   36.   The STEMEDIX website is laid out, and formatted in a manner to give
2   it a confusingly similar look and navigation feel to the STEMGENEX website.  The
3   color scheme and organization of content is confusingly similar to the
4   STEMGENEX website.

5   37.   STEMGENEX has been informed by clients that they have been
6   solicited by STEMEDIX, which has offered to provide stem cell therapy and other
7   services to them.

8   **Dr. Balshi's Admission of Wrongdoing**

9   38.   After STEMGENEX learned that Dr. Balshi was offering stem cell
10  therapy to clients introduced to them by STEMGENEX, Plaintiff's founder, Rita
11  Alexander, telephoned Dr. Balshi at 1:30 p.m. PST on December 15, 2014.

12  **Statements Made During the December 15, 2014 Telephone Call**

13  39.   After exchanging pleasantries, Ms. Alexander said that she understood
14  that Dr. Balshi was "working with STEMEDIX."

15  40.   Dr. Balshi said that he founded the company STEMEDIX.

16  41.   Dr. Balshi said STEMEDIX was his "little company."

17  42.   Dr. Balshi said that he was using STEMEDIX to market stem cell
18  therapy on the Internet without "exposing himself (his own name) too much."

19  43.   Ms. Alexander told Dr. Balshi that she was very disappointed that he
20  had created his own separate business, using the marketing and business practices
21  that STEMGENEX had given to him under their August 30, 2012 Agreement.

22  44.   Dr. Balshi said that through the STEMEDIX website, he had recruited
23  and treated patients not only who lived in Florida, but in other states.

24  45.   Ms. Alexander told Dr. Balshi that  naming his company STEMEDIX
25  was a way to confuse the public into working with Dr. Balshi as STEMEDIX when
26  they thought they were working with Dr. Balshi through STEMGENEX.

27  46.   Ms. Alexander told Dr. Balshi that STEMEDIX had been contacted by
28  individuals asking  what the connection was between STEMGENEX and

1   STEMEDIX.

2   47.   Ms. Alexander told Dr. Balshi that she would have to consider
3   terminating STEMGENEX' Agreement with him.

4   48.   After hearing that the Agreement for him to receive patient-candidate
5   introductions might be terminated, Dr. Balshi expressed remorse over what he had
6   done.

7   49.   Ms. Alexander told Dr. Balshi that she could no longer trust him and
8   that his actions "stung" worse now that she knew that he was not only working with
9   but was the owner of STEMEDIX.

10   50.   Dr. Balshi responded to the immediately preceding statement saying
11   words to the effect, "I will think about whether I want to do away with
12   STEMEDIX."

13   51.   Dr. Balshi said he would consider doing away with STEMEDIX in
14   order to "mend" his relationship with and continue his relationship with
15   STEMGENEX.

16   52.   Several days after the December 15, 2014 telephone call,
17   STEMGENEX learned from another client that STEMEDIX was continuing to
18   solicit the client to receive services from STEMEDIX.

19   53.   On December 23, 2014, the undersigned, acting on behalf of
20   STEMGENEX, sent a cease and desist letter to Dr. Balshi.  A true and correct copy
21   of the letter is attached as Exhibit A.

22   54.   On January 8, 2015, Attorney John R. Gillespie responded on behalf of
23   Dr. Balshi, denying that Dr. Balshi had any connection whatsoever with
24   STEMEDIX.

25   ### FIRST CLAIM FOR RELIEF

26   **Trademark Infringement under the Lanham Act**

27   55.   Plaintiffs repeat and re-allege the allegations of paragraphs 1 through
28   54 of the Complaint as if fully set forth herein.

56.     Defendants' unauthorized use of Plaintiff's Trademarks and related activities as alleged above, and their marketing using the domain name www.stemedix.com  infringe upon Plaintiffs' rights under the Lanham Act in such marks by showing a bad-faith intent to profit from Plaintiff's  Trademark by using Defendants' STEMEDIX name in a confusingly similar manner to Plaintiff's Trademark and/or in a manner dilutive of the STEMGENEX Trademark.

57.     Defendants' acts therefore violate 15 U.S.C. §1125(a).  As set forth above, Plaintiffs have previously notified Defendants of their obligation to cease use of Plaintiff's Trademark and to discontinue all infringement and misuse. Defendants have failed to do so.  Accordingly, Defendants' infringement is intentional and willful.  Further, Defendants' wrongful acts in connection with the ongoing infringement, are causing irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

58.     As a result of Defendants' intentional or reckless and/or negligent, trademark infringement, Plaintiff has suffered and is entitled to damages in an amount to be proven at trial, including, but not limited to, actual monetary damages or statutory damages, preliminary and permanent injunctive relief, costs and attorneys' fees.

59.     Plaintiff has no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury to its goodwill and reputation.  Plaintiff has suffered and continues to suffer immediate and irreparable harm due to Defendants' continued actions.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

60.     Plaintiff realleges and incorporates paragraphs 1 through 54 and 56 through 59 as though fully set forth here.

61.     Plaintiff had a contractual relationship with Defendant, Tom Balshi, M.D.,  a Medical Corporation dba Tom Balshi, M.D., P.A.,  by virtue of the written

1 | Agreement dated August 30, 2012.

2 |     62.    Plaintiff had a contractual relationship with Defendant, Tom Balshi,

3 | M.D. by virtue of the written Agreement dated August 30, 2012.

4 |     63.    Plaintiff performed each obligation, condition and covenant required

5 | of it under the Agreement.

6 |     64.    If any of those obligations, conditions and covenants were not

7 | performed, they were excused from performance by virtue of the conduct of the

8 | Defendants set forth in this Complaint.

9 |     65.    Defendant, Tom Balshi, M.D., a Medical Corporation dba TOM

10 | BALSHI, M.D., P.A. had a duty to perform each obligation, condition and covenant

11 | required of it under the Agreement, but failed to do so.

12 |     66.    Defendant, Tom Balshi, M.D., a Medical Corporation dba TOM

13 | BALSHI, M.D., P.A.'s breaches of the Agreement include, but are not limited to:

14 |     a.    Utilizing STEMGENEX business confidential information and

15 | business processes for his own benefit or the benefit of others in violation of what

16 | was authorized by this Agreement;

17 |     b.    Disclosing directly or indirectly STEMGENEX confidential

18 | business practices;

19 |     c.    Creating his own separate company to perform stem cell therapy

20 | outside of his Agreement with STEMGENEX, in direct competition with

21 | STEMGENEX;

22 |     d.    Diverting patient candidates introduced to him by

23 | STEMGENEX to his separate company, STEMEDIX depriving STEMGENEX of

24 | anticipated revenue under the Agreement; and

25 |     e.    Operating under a domain name for a marketing website,

26 | www.stemedix.com, which was registered via "Go Daddy on December 27, 2012

27 | and populating that website with STEMGENEX proprietary business information

28 | and style of doing business on or around April 1, 2013.

1    67.    Defendant, Tom Balshi, M.D. had a duty to perform certain

2    obligations, conditions and covenants under the Agreement, but failed to do so.

3    68.    As an individual, Tom Balshi was bound to (at least) two promises set

4    forth in the Agreement by virtue of the parties' specific use of the words "he" and

5    "his" - referring to Dr. Balshi himself and not simply his corporate shell.

6    69.    Dr. Balshi breached the Agreement in at least the following ways:

7    a.    He utilized "STEMGENEX business confidential information or

8    business processes *for his own benefit* or the benefit of others" in violation of the

9    limitations set forth in the Agreement; and

10    b.    He violated his promise that, *"he [shall not] disclose* in any

11    form or fashion directly or indirectly any STEMGENEX confidential business

12    practices."

13    The quotations in this paragraph are taken directly from the language of the

14    Agreement, with emphasis added.

15    70.    As a direct and proximate result of the breaches, Plaintiff has suffered

16    actual monetary damages plus interest at the maximum legal rate.

17    71.    As a direct and proximate result of the breaches, Plaintiff has suffered

18    actual damage and harm to its Trademark  interests and its proprietary business

19    information and good will as set forth above.

20    **PRAYER FOR RELIEF**

21    72.    Wherefore, Plaintiff prays for judgment against Defendants as follows:

22    73.    For an order preliminarily and permanently enjoining Defendants from

23    further infringing on Plaintiff's Trademark;

24    74.    For actual damages suffered by Plaintiff plus Defendants' profits or,

25    alternatively, for statutory damages pursuant to 15 U.S.C. §§1116 and 1117;

26    75.    Injunctive Relief, including that pursuant to 15 U.S.C. §1116;

27    76.    For actual damages suffered by Plaintiff as a result of Defendants'

28    tortious conduct;

1    77.    General and special damages according to proof;

2    78.    For attorney's fees and costs pursuant to 15 U.S.C. §1117.

3                            **DEMAND FOR JURY TRIAL**

4    Plaintiff STEMGENEX ®, INC. hereby demands a jury trial as provided in

5    Rule 38 of the Federal Rules of Civil Procedure.

6    DATED:  February 23, 2015              HIGGS FLETCHER & MACK LLP

7

8                                          By: *s/ Thomas W. Ferrell*

9                                          THOMAS W. FERRELL
                                           Attorneys for Plaintiff
10                                         STEMGENEX ®, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

 HIGGS
FLETCHER
& MACK<sup>ur</sup>

401 West A Street, Suite 2600
San Diego, CA 92101

PHONE   (619) 236.1551
FAX     (619) 696.1410

www.higgslaw.com

**Thomas W. Ferrell**
Partner
*tferrell@higgslaw.com*
*D   619.595.4235*
*Fax 619.696.1410*

December 23, 2014

(Via Overnight Delivery and email to *drb@balshimd.com*)

Thomas C. Balshi, M.D.
4665 W. Atlantic Ave,  Suite B
Delray Beach, FL 33445

Re:   Confidential Agreement between Tom Balshi M.D., A Medical corporation dba
      Tom Balshi, M.D. P.A. **and** StemGenex, Inc.

Dear Dr. Balshi,

This law firm represents StemGenex, Inc. and its affiliates. Take notice that StemGenex demands
that you immediately cease and desist soliciting patients to perform adipose adult stem cell
treatments as you are doing now in breach of the "Confidential Agreement" named above.  I include a
copy of the agreement bearing your signature for your reference.

Under that Agreement, StemGenex has introduced many of its clients to you who then undergo that
treatment.  You have received many hundreds of thousands of dollars in fees for the services
provided to StemGenex' clients.  Under the Confidential Agreement,  StemGenex has revealed to you
valuable and confidential proprietary information that has made the StemGenex program for studying,
educating and facilitating stem cell treatment the success it is today. That proprietary information
includes but is not limited to marketing materials, website content, scientific studies, program
organization and management procedures, its confidential business practices and pricing structures.

Through investigation, StemGenex has discovered that you have misappropriated StemGenex'
proprietary and confidential information and are using it to promote your independent business that
copies the StemGenex program.  Your separate business is in direct conflict with StemGenex by
using the proprietary information provided to you by StemGenex.

Your actions breach the Confidentiality provisions of the Agreement found on page 6, which binds
you:

> not to utilize any StemGenex business confidential information or business
> processes for [your] own benefit for the benefit of others except as is
> authorized  by this Agreement nor shall [you] disclose in any form of
> fashion directly or indirectly any StemGenex confidential business
> practices.

109087-00003
3068181.1

 HIGGS
FLETCHER
& MACK<sup>LLP</sup>

Thomas C. Balshi, M.D.
December 24, 2014
Page 3

During the same time that you have received fees for services flowing from introductions to
StemGenex' clients, you simultaneously copied the StemGenex program into your own personal
Stemedix company, using StemGenex' proprietary business information.  We have even discovered
in some of your ad materials a word-for-word copy of StemGenex' marketing text. Your choice of the
name "Stemedix" is itself an infringement of StemGenex' trademark rights designed to confuse
potential clients about the identity of Stemedix, playing off on the good will and name recognition
StemGenex has worked hard for many  years to establish.  Your actions violate the promises you
made in your agreement and make you liable in damages under that agreement and certain
provisions of federal and state statutes and the common law.

StemGenex demands that:

     1.     You delete all marketing and website content that is derived in whole or in part from the
StemGenex confidential program materials or its confidential business practices that have been
provided to you over the years;

     2.     You cease using (in all of your ongoing promotion and provision of stem cell treatment
services) any material or information derived from StemGenex' proprietary business information and
confidential business practices

     3.     You and all acting on your behalf cease making disparaging comparisons between the
StemGenex program and the stem cell treatment program you offer independently.

     4.     You provide a "Certificate of Destruction" under penalty of perjury affirming that you
have  destroyed all offending materials and website content as described above;

     5.     You return all materials of any description received from StemGenex or that promote
the StemGenex program, whatever the source, or, alternatively provide a Certificate of Destruction
as evidence of their destruction;

     6.     You provide an accounting, within 45 days, of all revenue received and all resulting
profits derived from non-StemGenex clients who received stem cell treatments that were promoted or
provided by you using StemGenex' proprietary business materials and practices.

     7.     Cease all use of the word "Stemedix" (alone or in combination with any other words) in
connection with the marketing or provision of any stem cell treatment.

We also understand that you have enlisted other physicians and surgeons in your solicitation of
clients using StemGenex' proprietary business information and practices.  StemGenex demands that
you:

 HIGGS
FLETCHER
& MACK LLP

Thomas C. Balshi, M.D.
December 24, 2014
Page 3

8.    Immediately contact all such professionals and provide them a copy of this letter; and

9.    Provide the names and contact information of each one to StemGenex within 45 days.

Your failure to respond promptly and affirmatively will be taken as refusal, leaving StemGenex little option but to invoke the binding arbitration provisions in the Confidential Agreement, to which you agreed.

Best regards,

THOMAS W. FERRELL
       of
HIGGS FLETCHER & MACK LLP

TWF/lm
Enclosure

cc:    Rita Alexander
       Candace  Henderson

109087-00003
3068181.1